PATTERSON *versus* PROPRIETORS OF EAST BRIDGE IN BELFAST.

The charter authorizing defendants to build a bridge over tide waters, required them to build it of suitable materials, at least twenty-two feet wide, *with a draw of sufficient width for vessels to pass through*, and sufficient rails on each side, with boarding or planking three feet high from the floor of said bridge, for the safety of passengers, *and the whole should be kept in good and safe repair*.

Under this section it was *held :* —

1st. That the corporators were bound to provide all necessary apparatus for raising the draw; —

2d. That they were bound to raise the draw for the passage of vessels through it; —

3d. That for any neglect or unnecessary delay in so doing, they were liable to pay the damages sustained.

ON REPORT from *Nisi Prius*, TENNEY, J., presiding.

This was an action of the CASE for neglecting and refusing to raise the draw of the bridge, when plaintiff wished to pass with his vessel.

Defendants are proprietors of a bridge built over tide waters in Belfast, under a charter, while this State was a part of Massachusetts.

The second section was as follows : —

"And be it further enacted, that the said bridge shall be well built of suitable materials, at least twenty-two feet wide, with a draw of sufficient width for vessels to pass through, and sufficient rails on each side, with boarding or planking three feet high from the floor of said bridge, for the safety of passengers, and the whole shall be kept in good and safe repair."

The charter contained no other requirement as to the draw. It was agreed that the charters of other bridges, granted about the same time, did specially require the cor-

porators to raise the draws when necessary; but that the charter of the Belfast bridge over this same stream, contained no such express requirement.

It appeared in evidence, that plaintiff wished to pass the draw with the schooner Elizabeth, laden with wood, in the winter of 1853; that he made known his desire to the person having charge of the bridge; that there were no ropes to raise the draw with, those formerly used being worn off; that two of the directors were notified of the deficiency, and no ropes were furnished until the plaintiff had been detained three days. The estimated damage for detention was fifteen dollars per day.

The Court were authorized to render judgment by nonsuit or default as the law required, and if a default was entered, the Court to make up the damages from the facts reported.

*Dickerson,* for defendants.

It was manifestly the intention of the Legislature granting this charter to exempt the corporators from raising the draw. The charters of other like corporations, about the time this was granted, contained a special provision that they should raise the draw. The omission here was evidently designed.

Corporations derive their powers from their charter, and are under no obligations not imposed by them. The language of the charter is plain, and its requirements have been complied with.

By leaving out the clause " to raise said draw as occasion may require," it seems to have been the intention of the Legislature that masters of vessels should themselves raise the draw. However this may be, it is not imposed on defendants.

The objection that the Legislature has no right to authorize a corporation to prevent the passage of vessels through navigable tide waters, does not lie in this case.

1. Because the plaintiff has sued for " not raising the draw."

2. Because, on the supposition that defendants are not bound to raise the draw, this is no such obstruction as conflicts with the general freedom of navigable waters. The argument drawn from a want of legislative authority to erect a bridge with a draw, to be raised by those wishing to. pass the same, proves too much. It proves that no *obstruction* or *impediment* can be legally interposed, contrary to a series of judicial decisions. Even if the corporators were obliged to raise the draw, it would still be an impediment and hindrance. Here was the impediment to be removed by those desiring to pass through.

*N. Abbot,* for plaintiff.

The charter is silent upon the question of raising the draw, and upon the apparatus with which it is to be raised; yet the duty imposed by the charter, to build and keep a draw, necessarily imposes, by implication, the duty to furnish the necessary apparatus with which to raise the draw and to raise it when necessary.

Statutes and charters are to be construed so that they may have a reasonable effect. 3 Mass. 523; 5 Mass. 380; 7 Mass. 458; 15 Mass. 205; 23 Pick. 93.

It is presumed the Legislature intended the most reasonable and beneficial construction of their Acts, when the design is not apparent. 4 Mass. 534; 12 Mass. 383.

When their Acts are obscure, Courts will give to them a sensible and reasonable interpretation. 13 Mass. 324.

The construction of this charter contended for by defendants, would not only be insensible and unreasonable but absurd.

Private statutes, made for the accommodation of particular citizens or corporations, ought to be so construed as to preserve the rights and privileges of the public. 4 Mass. 140; 2 Mass. 143; 3 Mass. 263; 7 Mass. 393; 18 Pick. 501.

By the express provisions of the charter, the defendants were to build a draw; it was without ropes, a necessary part of it, and defendants are liable, even if not bound to *raise* the draw.

APPLETON, J. — The defendants are a corporation created by legislative Act, upon whom is conferred the right of erecting a bridge over the navigable waters of the State. This erection is an interference with and a limitation of the general rights of the public and would be liable to an indictment as a public nuisance, were it not for the protection afforded by the charter, under the authority of which it was built.

By the second section of the defendants' charter, it is provided, " that the said bridge shall be well built of suitable materials, at least twenty-two feet wide, *with a draw of sufficient width for vessels to pass through,* and sufficient rails on each side, &c., &c., and *the whole shall be kept in good and safe repair.*" This being a private statute, passed for the benefit of a particular corporation, it ought not to be construed to affect the rights and privileges of others, unless such construction result from express words or necessary implication. *Coolidge* v. *Williams,* 4 Mass. 140.

It was the obvious design of the Legislature, that the bridge to be erected, should be so built as not to interfere with or unnecessarily impede the navigable rights of the public. The corporators, by their acceptance of the charter, have acceded to the terms imposed upon the corporation, and must be held to their strict performance.

One of the duties required of the corporation was, there should be " *a draw of sufficient width for vessels to pass through.*" The draw is for the passage of vessels. Without it vessels could not pass. That means should be provided to afford a passage for vessels, was the evident design of the Legislature. The case finds, that there were no ropes with which to raise the draw, those formerly used having been worn off. But a draw without the necessary and fitting apparatus, would be useless. The masters of vessels cannot be expected to foreknow what tackle may be needed, nor can it be regarded as a part of the fitting out of a vessel, that it should have the apparatus necessary for passing through the draw. The draw cannot be considered

as completed, until it is in a condition for present and immediate use.

The statute requires, that the "whole shall be kept in good and safe repair." This includes the draw as well as the bridge. The keeping the bridge and the draw in repair is to be done by the corporation and not by the public.

But the bridge having been built with a draw ready and fitted for instant use, by whom is it to be raised "for vessels to pass through?" The draw is made for use. The title to it is in the corporation. Nothing in the charter confers upon the public the right to use or control, without the consent of the owners, that which is private property. The management of the draw must be in the defendants or in the public. The interest of the defendants requires, that it should at all times be under the control of those who erected it, and by the terms of their charter, are bound to see that it should be "in good and safe repair." In *New Haven & East Haven Toll Bridge Corporation* v. *Bunnel,* 4 Conn. 54, the charter of the corporation required, that they should have a draw in some convenient place in the channel to admit the passage of vessels. In that case, which was an action brought by Bunnel against the corporation for their neglect to open the draw of their bridge upon reasonable notice and request, and which was brought before the Supreme Court of Errors by the defendants, Hosmer, C. J., in delivering the opinion of the Court, says, "first it is the indispensable duty of the company to erect and keep in repair, a good and sufficient draw for the general accommodation. Secondly, it was equally their duty on due notice and request to open the draw for the passage of vessels and that promptly, without unnecessary delay. This proposition has been denied; but in my opinion, on no reasonable ground. On what principle could a stranger to the company assume on himself the management of the draw? Over their property he has no right; and his entry upon it, except in the usual manner, for the purpose of passage, would be wholly unwarrantable. To have the management

of the draw, is not only the exclusive right, but the unquestionable interest of the company to preserve this essential part of the bridge, from the maltreatment of men unaccustomed to handle it and to prevent the unnecessary and unreasonable obstruction of the public travel. It is unreasonable, even to absurdity, to hold that strangers, at their pleasure, may intermeddle with the property of the company and subject them to the hazard of serious injury to the draw, and a diminution of their profits." The conclusion is, that upon the language of the defendants' charter, they have been guilty of corporate neglect and are liable to the plaintiff for such damages as he may have sustained.

*Defendants defaulted.*